788 N.W.2d 860 (2010)
PEOPLE
v.
CORR.
Docket No. 289330.
Court of Appeals of Michigan.
Submitted January 6, 2010, at Lansing.
Decided January 19, 2010.
Approved for publication March 9, 2010, at 9:10 a.m.
*862 Michael A. Cox, Attorney General, B. Eric Restuccia, Solicitor General, Jeffrey L. Sauter, Prosecuting Attorney, William M. Worden, Senior Assistant Prosecuting Attorney, and D. Sunny Matz, Assistant Prosecuting Attorney, for the people.
Kronzek & Cronkright PLLC, Lansing, (by Steven A. Freeman and Brandy J. Thompson), for defendant.
Before: MARK J. CAVANAGH, P.J., and FITZGERALD and SHAPIRO, JJ.
PER CURIAM.
The prosecution appeals by leave granted the circuit court's order affirming the district court's decision not to bind over defendant for trial on two counts of assaulting, resisting, and obstructing a police officer, MCL 750.81d(1). We reverse and remand for reinstatement of the charges.
The charges in this case stem from defendant's violent behavior against police officers after a pickup truck in which she was a passenger was stopped on suspicion that it was being operated by a drunk driver. Defendant's son was driving the truck and both he and defendant were intoxicated. Defendant got out of the pickup truck and disobeyed the officers' instructions to return to the vehicle. She kicked, shoved, and elbowed the officers. The facts were disputed regarding whether this conduct occurred while defendant's son was sitting in the back of a patrol car after having been arrested, or after he had been taken to jail.[1]
The district court found no probable cause to bind over defendant for resisting or obstructing police officers because the police unlawfully detained defendant. The *863 district court concluded that defendant did not "obstruct" as defined in the statute because she did not refuse to obey a lawful command to return to the truck.
The circuit court affirmed on different grounds. The circuit court found that there was probable cause to believe that defendant's actions satisfied the elements of resisting or obstructing a police officer. The court agreed that defendant was illegally detained, but acknowledged that an unlawful arrest does not preclude prosecution for resisting and obstructing a police officer. Instead, the circuit court concluded that the illegal arrest required application of the exclusionary rule to bar the officers' testimony, without which probable cause could not be established. The prosecution now appeals.
In reviewing a decision to bind a defendant over for trial, we apply the following standards:
A magistrate's ruling that alleged conduct falls within the scope of a criminal statute is a question of law reviewed [de novo] for error, and a decision to bind over a defendant is reviewed for abuse of discretion. In reviewing the district court's decision to bind over a defendant for trial, a circuit court must consider the entire record of the preliminary examination, and it may not substitute its judgment for that of the magistrate. Reversal is appropriate only if it appears on the record that the district court abused its discretion. . . . Similarly, this Court reviews the circuit court's decision de novo to determine whether the district court abused its discretion. [People v. Orzame, 224 Mich.App. 551, 557, 570 N.W.2d 118 (1997) (citations omitted).]
"The district court must bind over a defendant if the evidence presented at the preliminary examination establishes that a felony has been committed and there is probable cause to believe that the defendant committed the crime." People v. Terry, 224 Mich.App. 447, 451, 569 N.W.2d 641 (1997). "Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to support a bindover." Id.
After reviewing the testimony of the officers at the preliminary examination, we find that the district court erred in its decision not to bind defendant over for trial because the evidence established probable cause to believe that defendant committed the offense. Under MCL 750.81d(1), the elements required to establish criminal liability are: (1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties. MCL 750.81d(1); MCL 750.81d(7)(b)(i); People v. Ventura, 262 Mich.App. 370, 374-375, 686 N.W.2d 748 (2004). "`Obstruct' includes the use or threatened use of physical interference or force or a knowing failure to comply with a lawful command." MCL 750.81d(7)(a).
First, testimony by the police officers who were at the scene established probable cause to believe that defendant assaulted, battered, resisted, or obstructed a police officer. The testimony revealed that defendant pushed, shoved, elbowed, and kicked the officers after they repeatedly commanded or warned her to stay in the vehicle. Rather than submitting, defendant disobeyed the officers' commands and aggressively came into physical contact with them (1) when she got out of the vehicle and "pushed" an officer in an attempt to get by the officer, (2) when she struggled with and elbowed *864 the officer when the officer was trying to get her back into the vehicle, and (3) when she struggled with and kicked and shoved the officers who were trying to confine her during her arrest. We agree with the circuit court that defendant's conduct constituted the type of conduct specifically prohibited under MCL 750.81d(1), regardless of the lawfulness of the officers' commands to stay in the vehicle. Under MCL 750.81d(1), it is illegal to assault, batter, resist, or obstruct an officer even if the officer is taking unlawful action, as long as the officer's actions are done in the performance of the officer's official duties. Ventura, 262 Mich.App. at 377, 686 N.W.2d 748.
The testimony also provided credible evidence that defendant knew or had reason to know that the person that she assaulted, battered, resisted, or obstructed was a police officer performing his or her duties. The phrase "has reason to know" "requires the fact-finder to engage in an analysis to determine whether the facts and circumstances of the case indicate that when resisting, defendant had `reasonable cause to believe' the person he was assaulting was performing his or her duties." People v. Nichols, 262 Mich.App. 408, 414, 686 N.W.2d 502 (2004). Given that the vehicle was pulled over during a traffic stop by a patrol car with activated emergency lights, additional officers arrived on the scene to assist the officer, and the officers performed ordinary police functions during the stop, such as checking defendant's identification, performing sobriety tests on the driver, arresting the driver, maintaining control over the scene, ordering defendant to remain in the vehicle, and administering breathalyzer tests in an attempt to locate a sober driver to move the vehicle from the roadway, defendant knew or had reason to know that the persons she assaulted were police officers performing duties in their official capacity. Therefore, defendant's conduct provided probable cause to believe that defendant violated MCL 750.81d(1).
We do not agree with the district court's reasoning that defendant's assaultive conduct could not be used to establish liability under MCL 750.81d(1) because the officers no longer possessed the lawful authority to command her to stay in the vehicle after they completed the criminal investigation. The statutory language of MCL 750.81d(1) is not so limiting. To the contrary, the unambiguous language, "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties" (emphasis added), shows that the Legislature intended that the statute encompass all the duties of a police officer as long as the officer is acting in the performance of those duties. See Ventura, 262 Mich.App. at 375-376, 686 N.W.2d 748. Here, even though it was evident that the criminal investigation had likely been completed by the time defendant got out of the vehicle and assaulted the officers, the officers were still performing duties at the scene, including maintaining the peace and controlling the scene, locating a sober driver to move the vehicle from the roadway, and protecting the safety of defendant, especially considering her intoxicated state and the inclement weather conditions. Such noninvestigatory duties have been recognized by our courts as official duties of the police. See People v. Davis, 442 Mich. 1, 20, 497 N.W.2d 910 (1993) ("The police perform a variety of functions that are separate from their duties to investigate and solve crimes," which are "sometimes categorized . . . [as] `community caretaking' or `police caretaking' functions," including, but not limited to, the impoundment of vehicles, inventory searches, and rendering aid or assistance to persons in *865 distress); People v. Vasquez, 465 Mich. 83, 88, 631 N.W.2d 711 (2001), quoting People v. Little, 434 Mich. 752, 759, 456 N.W.2d 237 (1990) ("`[A]n officer's efforts to "keep the peace" include ordinary police functions that do not directly involve placing a person under arrest.'").
Accordingly, under the circumstances of this case, defendant had "reasonable cause to believe" that the officers' conduct in maintaining the peace at the scene, attempting to move the vehicle from the roadway, and protecting defendant's safety, constituted the performance of their duties in their official capacity when she failed to comply with their commands to stay in the vehicle and physically assaulted them. Nichols, 262 Mich.App. at 414, 686 N.W.2d 502. The district court abused its discretion by refusing to bind defendant over for trial on the assaulting, resisting, and/or obstructing charges. Orzame, 224 Mich.App. at 557, 570 N.W.2d 118.
Although we agree with the circuit court that defendant's conduct established probable cause to support her bindover for trial, we find that the court erred in its determination that the officers' testimony must be excluded as the "fruit" of defendant's illegal detention. We review de novo "whether the Fourth Amendment was violated and whether an exclusionary rule applies." People v. Hyde, 285 Mich. App. 428, 438, 775 N.W.2d 833 (2009), citing People v. Fletcher, 260 Mich.App. 531, 546, 679 N.W.2d 127 (2004).
"Both the United States and the Michigan Constitutions guarantee the right against unreasonable searches and seizures." People v. Snider, 239 Mich. App. 393, 406, 608 N.W.2d 502 (2000), citing U.S.C.A. Const. Amend. IV; Const. 1963, art. 1, § 11. "Generally stated, the test for what constitutes a seizure is whether, `in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" People v. Bolduc, 263 Mich.App. 430, 438, 688 N.W.2d 316 (2004) (citations omitted). Whether defendant's continued detention in the vehicle was lawful depends on its reasonableness. Snider, 239 Mich.App. at 406, 608 N.W.2d 502. "The benchmark for satisfaction of Fourth Amendment rights is reasonableness, and reasonableness requires a fact-specific inquiry that is measured by examining the totality of the circumstances." Hyde, 285 Mich.App. at 436, 775 N.W.2d 833.
The officers' commands to stay in the vehicle constituted a seizure under the Fourth Amendment because a reasonable person in defendant's situation would have believed that she was not free to leave. Bolduc, 263 Mich.App. at 438, 441, 688 N.W.2d 316. However, under the circumstances of this case, we find that it was reasonable, for the officer's safety as well as for defendant's safety, for the officers to command defendant to remain in the vehicle while they completed their noninvestigatory duties at the traffic stop, particularly considering that defendant was intoxicated and aggressive toward the officers during the stop, bystanders had arrived on the scene, and the weather conditions were dangerous. Under these circumstances, the officers, still had a need to maintain control over the scene even though the driver had been arrested and secured in the patrol car. Arizona v. Johnson, ___ U.S. ___, 129 S.Ct. 781, 788, 172 L.Ed.2d 694, 704-705 (2009). It is "reasonable for passengers to expect that a police officer at the scene of a crime, arrest, or investigation will not let people move around in ways that could jeopardize his safety." Brendlin v. California, 551 U.S. 249, 258, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). Furthermore, "[t]he temporary seizure of driver and passengers ordinarily continues, and remains *866 reasonable, for the duration of the stop," which normally "ends when the police have no further need to control the scene, and inform the driver and passengers they are free to leave." Arizona, ___ U.S. at ___, 129 S Ct at 788, 172 L.Ed.2d at 704. Accordingly, we find the officers' commands to stay in the vehicle, which resulted in defendant's detention beyond the time of the driver's arrest but before the time that the officers had completed their duties at the scene, to be lawful. Moreover, we find no evidence of bad faith or misconduct on the part of the officers to indicate that defendant was being detained for the purpose of searching for or obtaining evidence against her. Instead, by ordering defendant to stay in the vehicle, the officers were merely attempting to keep defendant safe and maintain order and control over the scene so they could perform their noninvestigatory police functions.[2]
Finally, even if defendant's detention had been unlawful, we conclude that the circumstances do not warrant the exclusion of the officers' testimony in this case. "[T]he exclusionary rule is a harsh remedy designed to sanction and deter police misconduct where it has resulted in a violation of constitutional rights" and "should be used only as a last resort." People v. Frazier, 478 Mich. 231, 247, 733 N.W.2d 713 (2007) (quotation marks and citations omitted). "In determining whether exclusion is proper, a court must evaluate the circumstances of the case in the light of the policy served by the exclusionary rule. . . ." Id. at 249, 733 N.W.2d 713 (quotation marks and citations omitted).
The mere fact of an illegal arrest does not per se require the suppression of evidence. People v. Kelly, 231 Mich.App. 627, 634, 588 N.W.2d 480 (1998). "It is only when an `unlawful detention has been employed as a tool to directly procure any type of evidence from a detainee' that the evidence is suppressed under the exclusionary rule." Id., quoting People v. Mallory, 421 Mich. 229, 240-241, 365 N.W.2d 673 (1984) (emphasis in original).
Here, there is no indication from the testimony that the officers exploited the detention to obtain evidence, acted in bad faith, or that the detention was employed as a tool to procure evidence from defendant. Instead, it is apparent that the officers detained defendant to maintain control of the scene and protect their safety as well as defendant's safety while they finished performing their duties at the scene. Furthermore, the evidence at issue (the officers' testimony) was obtained when defendant, subsequent to the detention, illegally assaulted, battered, resisted, or obstructed the officers' performance of their duties. MCL 750.81d(1). As we have previously held:
[T]he exclusionary rule does not act to bar the introduction of evidence of independent crimes directed at police officers as a reaction to an illegal arrest or search. Any other conclusion would effectively give a person who has been the victim of an illegal seizure the right to employ whatever means available, no matter how violent, to elude capture. [People v. Daniels, 186 Mich.App. 77, 82, 463 N.W.2d 131 (1990) (citation omitted).]
We know of no law that permits a suspect to avoid prosecution for crimes committed *867 when illegally detained, and decline to adopt such a rule. Defendant did not have a right, based on the alleged unlawful detention, to resist and obstruct the officers in the discharge of their duties. Ventura, 262 Mich.App. at 376-378, 686 N.W.2d 748. Once defendant used force against the officers, they had probable cause to arrest her under MCL 750.81d(1). Pursuant to this lawful arrest, any evidence seized would be admissible. See People v. Lambert, 174 Mich.App. 610, 617-618, 436 N.W.2d 699 (1989) (holding that where there is "no exploitation of the primary illegality . . ., the `fruit of the poisonous tree' doctrine [is] inapplicable" to a subsequent lawful arrest).
Reversed and remanded for reinstatement of the charges. We do not retain jurisdiction.
NOTES
[1] Although a fair reading of the testimony indicates that defendant's behavior began before her son's removal from the scene, at the preliminary examination, the district court summarized the facts, to which the parties stipulated, to indicate that defendant's actions only occurred after her son had been removed. For this opinion, we have relied on the facts as stipulated at the preliminary examination. However, on remand, the parties are not precluded from arguing, consistent with the evidence, that some of the actions took place before the son's removal from the scene.
[2] It was evident from the testimony that, during the detention, the officers diligently pursued their investigation and did not exceed the original justification for the stop. People v. Chambers, 195 Mich.App. 118, 123, 489 N.W.2d 168 (1992), citing United States v. Sharpe, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985).